Curia, per Johnson, Ch.
I concur entirely in the decree of the circuit court, and but for some diversity of opinion amongst the members of this court, I should not have felt called on to say more.
The question whether an ordinary mortgage is embraced in the words, “any assignment or transfer,” found in the statute of Georgia, came directly before the Court of Appeals of this State, in the case of the Bank of Georgia against Henry Schultz, at January term, 1827, in which it was held that mortgages are embraced by them, and in the absence of any authoritative decision of the courts of Geoiv gia upon the subject, the defendants are entitled to the full benefit of that decision.
Without intending to enter into a minute analysis of this statute, it may be remarked that from what may be col= lected from its title, the preamble and the enactment, the Legislature intended to prohibit any one who was “unable to pay his debts,” from securing any portion of his effects to himself by “assignment or transfer,” and from giving to one creditor a preference over another, upon the principle that in justice all were equally entitled; and notwithstanding some grave objections opposed to it, I am disposed to concede that upon a strict construction of the statute, if at the time of the assignment or transfer the debtor was in truth *560 unable to pay all his debts, the assignment or transfer would be void, although the fact was unknown both to the debtor and the assignee or transferee; but it is very clear that the fact of the inability of the debtor to pay his debts, must be referred to the time of the contract, and cannot be made to depend on subsequent casualties, to which the fortunes of all men are exposed. It is not so provided in the statute, and a different construction would render all securities by liens on property dependant on the ultimate solvency of the debtor. I take it, therefore, that it is incumbent on the party seeking to avoid the contract or assignment, to shew that at the time the debtor was unable to pay his debts.
The questions then arise, as to the time when the contract between the Savannah and Augusta Steam Boat company, and the Central Rail Road Banking company of Georgia, was entered into, and whether the former were or were not at the time unable to pay their debts.
I collect from the pleadings that the debt to secure which the mortgage was given, was contracted in 1838, and at that time there was an agreement on the part of the Steam Boat company to secure their indorsers by a mortgage of their effects; that, in itself, created an equitable lien, and the fact of the inability of the company to pay their debts, ought, I think, to be referred to that time, for the subsequent execution of the mortgage in 1840, was but a fulfilment of that agreement. The mortgage being in effect a security to the indorsers, and, moreover, avowedly intended for that purpose, and of the fact of insolvency at that time, there is no evidence at all. But if it be referred to the time of the mortgage, it was incumbent on the party affirming it, to prove the insolvency of the Steam Boat company; and to shew that such was not the fact, I need only refer to the evidence, and the conclusion deduced from it by the Chancellor who tried the cause, and that in all doubtful questions has always been regarded by this court as decisive of it. It is put on the footing of the verdict of a jury in a law court, with regard to which the rule is, that if there is evidence on both sides, the court will not weigh it in an appeal, unless there is a great preponderance on one side, but suffer the verdict to stand ; and it ought to *561 be remembered, too, that if the claims of the attaching creditors are sustained, it works a forfeiture of the security which the indorsers and the Rail Road and Banking company have obtained by their vigilance, amounting in effect to a legal, if not an actual fraud, which never can be allowed but on clear and unequivocal proof. Here all the arguments on the part of the attaching creditors are based on the supposition that the evidence is equivocal.
It is very clear that this court has the power to direct an issue at law as well as the circuit court, of which we have numerous examples. The object is to inform the conscience of the court as to the truth of the facts involved in the issue. During the many years that I presided in the law court, the uniform course of the Constitutional Court, on appeals in cases involving doubtful questions of fact, was to refer it to the Judge who presided on the circuit, to say whether in his judgment the verdict was or was not opposed to the decided preponderance of evidence, and to grant or refuse a new trial accordingly; and I think the same rule ought to prevail in this court.
I know that the general usage has been in conformity with it. For the most part, the Chancellor, who has derived his information from original sources, is better able to judge of the truth of facts, than those who obtain the knowledge of them through a second hand. I do not intend to be understood as laying this down as an imperative rule, for that would cut off all consideration of matters of fact, nor was it so understood in the Law Court. All that I mean to say is, that it ought, like the verdict of a jury, to prevail, unless there is a decided preponderance of evidence opposed to the opinion of the Chancellor; and that I have already shewn is not the case here.
This brings me to the consideration of the last ground of this appeal, which, in effect, insists that under the peculiar circumstances of the case, the mortgage creditors ought to be compelled to resort to and exhaust their remedy against the indorsers, before they should touch the fund in court.
Judging from what appears on the face of the decree, this would seem to be rather a novel proposition. The well established doctrine of this court is, that the surety is entitled to the benefit of all the securities which the *562 creditor obtains from the debtor for the payment of the debt, and that the creditor must exhaust these before he can call on the surety for payment; and this is in the teeth of the proposition stated in this ground of appeal. But under this covert, it was stated in the argument, and for any thing that appears the fact may be so, although it is not in proof, that the endorsers of the several notes were the directors of the Steam Boat company, and that it was they who contracted with themselves to be indemnified by a mortgage against their liabilities as indorsers; and hence it is attempted to be inferred that it was a fraudulent device on their part to gain a precedence over other creditors. There is, upon a superficial view, something very startling in this, if the facts be true, and they probably are as to some, perhaps all, of the indorsers; but the alarm will cease when we take into consideration the motives and influences which operate upon men to lend their credit to assist individuals or corporations to pursue their enterprises. The directors of a corporation ought to be, and generally are, better informed as to its liabilities and resources than any one else, and if they, having the means, refuse to aid them in their operations, by the loan of money or credit, no one else will be found to do it; and I need not add, what is known to all having any experience, that an overweening confidence in their capacity to manage the affairs of a corporation, and a mistaken view of the state of its finances, has often involved the stockholders, and especially the directors, in distress and ruin. No man likes to give up an enterprise in which he has embarked, until he is satisfied that it cannot succeed, and this feeling is strengthened by the numbers that are embarked in it. Few are willing to recede, whilst there are any to persevere. Now there is nothing, either in law or equity, which forbids a member, or even a director, of a corporation, from contracting with it, and like any other individual, he has a right to prescribe his own terms, which the corporation are at liberty to accept or reject, and when the contract is concluded, he stands in the same relation to the other creditors of the corporation, as any other individual would under the same circumstances. When the question of priority arises, it must depend on the bona Jides *563 of the transaction, fraud or no fraud. If by greater diligence, and without fraud, he has fairly gained an advantage over the other creditors, he is entitled to retain it; and I cannot, from the evidence in this case, detect the slightest ground of suspicion that there was any fraud on the part of the indorsers, in obtaining the mortgage to secure the debt of the Steam Boat company.
It is objected on behalf of the attaching creditors that the indorsers ought to have been made parties, and certainly the general rule is, that all persons having an interest in the subject matter in controversy, which wdll be affected by the judgment of the court, ought to be made parties.
It would be a sufficient answer to this objection, that it was not raised by the pleadings, nor is it found in the grounds of appeal, and comeg from a party who might have made them parties, if they had thought proper. In addition to this, I cannot perceive how the attaching creditors are interested that the indorsers should be made parties. They are represented by the Rail Road and Banking company, and it is their interest that the company should exhaust their remedy against the principal debtor before they resort to them, (the indorsers) and the court would doubtless compel the company to do so, on the application of the indorsers ; but they have not sought to come in for that purpose, and for myself, I cannot see what benefit or advantage the attaching creditors would derive from it, or in what it would aid their defence.
I am, therefore, of opinion, that the decree of the circuit court ought to be affirmed and the appeal dismissed, and it is so ordered.
Johnston, Chancellor, concurred.